[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 414.]

SHUMP, APPELLEE AND CROSS-APPELLANT, v. FIRST CONTINENTAL-ROBINWOOD ASSOCIATES, A.K.A. ROBINWOOD ASSOCIATES, LTD., APPELLANTS AND CROSS-APPELLEES, ET AL.

[Cite as *Shump v. First Continental-Robinwood Assoc.*, 1994-Ohio-427.]

*Landlords and tenants—Landlord owes tenant's guest same duty of care that landlord owes tenant.*

A landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant. (*Stackhouse v. Close* [1911], 83 Ohio St. 339, 94 N.E. 746, paragraph one of the syllabus; 2 Restatement of the Law 2d, Torts [1965], Sections 355 to 362, approved and adopted; and Restatement of the Law 2d, Property [1977], Sections 17.6 and 19.1, approved.)

(No. 93-1381—Submitted September 14, 1994—Decided December 27, 1994.)

Appeal and Cross-Appeal from the Court of Appeals for Montgomery County, No. 13173.

———————————

{¶ 1} Ronald Daugherty leased a two-story town house in Robinwood Estates, located in Dayton, Ohio, from First Continental-Robinwood Associates, a.k.a. Robinwood Associates, Ltd. ("First Continental"), the owner of the apartment complex. The apartment contained one smoke detector. First Continental had hired Bill Goessl Electric, Inc. d.b.a. Bill's Electric ("Goessl"), an independent contractor, to install smoke detectors in all of the apartments in the Robinwood Estates, including the apartment leased to Daugherty. In Daugherty's apartment, Goessl installed the smoke detector on the ceiling in a hallway between two bedrooms on the second floor and immediately above the stairway leading from the first floor to the second floor.

{¶ 2} On October 11, 1987, Sandra J. Burnside visited Daugherty at his apartment. At approximately 1:30 a.m., a couch in the downstairs living room began to burn, emitting large amounts of smoke and carbon monoxide. First Continental asserted that fire department personnel determined that an unattended cigarette caused the fire. Daugherty and Burnside, who apparently had been sleeping in one of the two bedrooms on the second floor, apparently awoke when the smoke detector alarm sounded. However, both failed to escape from the second floor and died from smoke inhalation and/or carbon monoxide poisoning.

{¶ 3} On behalf of Sandra Burnside's three children, Joe Shump, the administrator of the estate of Sandra Burnside, filed a wrongful death claim against First Continental, Goessl and others. In his complaint, Shump asserted that the defendants were negligent for failing to install an additional smoke detector on the lower level of Daugherty's apartment, as allegedly required by a 1984 city ordinance. Shump asserted that a second smoke detector on the lower level would have detected the smoke sooner than the smoke detector on the second floor, thus enabling Daugherty and Burnside to escape.[1]

{¶ 4} Defendants First Continental and Goessl filed motions for summary judgment in the Common Pleas Court of Montgomery County. The trial court

---

1. The 1984 version of section 92.117 of the Dayton City Ordinances, Fire Prevention, provides:
   "Smoke detectors shall be installed and maintained in full operation in all of the following:
   "***
   "(D) Apartment.
   "(1) In each sleeping area; and
   "(2) In or near each stairway leading to an occupied area in such a manner as to assure that rising smoke is not obstructed in reaching the detector, and that rising smoke cannot effectively bypass the detector before it reaches the occupied area."
   Section 92.117(G) of the city ordinances further provides:
   "All smoke detectors required by this section shall be installed in conformity with the National Fire Protection Association Standard ["NFPA"] #74, 1980 edition."
   Section 2-1.1.1 of NFPA Standard No. 74, 1980 edition, states, "Smoke detectors shall be installed outside of each separate sleeping area in the immediate vicinity of the bedrooms and on each additional story of the family living unit including basements ***." Under Section 92.112 of the ordinance, First Continental, as the owner of the Robinwood Estates, is responsible to comply with the requirements under Section 92.117.

granted Goessl's motion. Ruling that the duty to comply with safety codes imposed upon First Continental by R.C. 5321.04(A)(1) was nondelegable, the court reasoned that Goessl could not be found liable for any negligence. Ultimately, the trial court also granted First Continental's motion for summary judgment. The court dubbed Burnside a licensee and reasoned that First Continental merely owed Burnside a duty to refrain from willful and wanton conduct, which Shump had failed to demonstrate.

{¶ 5} Shump appealed and presented the following three assignments of error: (1) the court erred in granting Goessl's motion for summary judgment, because the presence of a nondelegable duty owed by a landlord does not exonerate Goessl, an independent contractor, from liability for his own negligent acts; (2) the court erred in granting First Continental's motion for summary judgment, because whether First Continental acted willfully or wantonly is a question of fact for the jury to decide; and (3) the distinction between the common-law duty that a landowner owes an invitee and the duty a landowner owes a licensee should be abolished.

{¶ 6} The court of appeals reversed the judgment of the trial court and remanded the cause for further proceedings. Agreeing with Shump's first assignment of error, the court concluded that First Continental's breach of its nondelegable duty to maintain the apartment in a reasonably safe condition did not exonerate Goessl from liability for his own negligent acts. Finding genuine issues of material fact as to whether Goessl breached his duty of ordinary care, the court of appeals held that the trial court erred in granting Goessl's motion for summary judgment. The court of appeals also upheld Shump's second assignment of error. Noting that evidence of willful and wanton conduct is generally a question for the jury, the court concluded that genuine issues of fact existed as to whether First Continental acted wantonly or willfully. The court of appeals overruled Shump's third assignment of error. It reasoned that the Ohio Supreme Court has shown no

inclination to disregard the common-law distinctions among trespassers, licensees, and invitees.

{¶ 7} First Continental has appealed and argues that the court of appeals erred in reversing the trial court, because there was no evidence that First Continental acted wantonly or willfully. Shump has cross-appealed, primarily arguing that the distinction between licensees and invitees under the common law of premises liability should be abolished and that First Continental owed Burnside a duty to exercise reasonable care.

{¶ 8} The cause is now before this court upon the allowance of a motion and cross-motion to certify the record.

_____

*E. S. Gallon & Associates* and *David M. Deutsch*, for appellee and cross-appellant.

*Jenks, Surdyk & Cowdrey Co., L.P.A., Scott G. Oxley* and *Robert F. Cowdrey*, for appellants and cross-appellees.

_____

WRIGHT, J.

{¶ 9} All parties and both lower courts have determined that the general law of premises liability governs the outcome of this case and have shaped their arguments accordingly. The question as to whether there is any evidence that First Continental acted willfully or wantonly with regard to Burnside arises only if we find that a licensor-licensee relationship existed between those parties under the law of premises liability.

{¶ 10} Although we believe that this case involves the law of premises liability in a broad sense, we do not agree that the duty that First Continental owed Burnside should be governed by the common-law classifications of trespasser, licensee, or invitee. Instead, we think that the common law governing the tort liability of a landlord for injury or death caused by the dangerous condition of a

4

leased premises governs the outcome of this case. See, generally, Annotation (1975), 64 A.L.R.3d 339.

{¶ 11} It is axiomatic that, under the common law of premises liability, the status of the person who enters upon the land of another (*i.e.*, trespasser, licensee, or invitee) defines the scope of the legal duty that the responsible party owes the entrant. Because one person is usually both the owner and possessor of real estate, in many premises liability cases no question arises as to who has the responsibility to maintain a premises in a safe condition. Where a party other than the owner possesses a premises (as in the case of a leased premises), under the common law of premises liability, the possessor or occupier and not the owner owes the applicable legal duty to the entrant. See 5 Harper, James & Gray, Law of Torts (2 Ed.1986) 134, 271, Sections 27.2 and 27.16 ("Harper & James"); Prosser & Keeton, Law of Torts (5 Ed.1984) 434, Section 63 ("Prosser"); Page, Law of Premises Liability (1976) 2-3; 2 Restatement of the Law 2d, Torts (1965), Sections 328E to 350.

{¶ 12} This, of course, means that the common-law classifications of trespasser, licensee, and invitee determine the legal duty that a *tenant* owes others who enter upon rental property that is in the exclusive possession of the tenant. However, with regard to areas within the exclusive possession of a tenant, the common-law classifications do not affect the legal duty that a *landlord* owes a tenant or others lawfully upon the leased premises. See, *e.g.*, 2 Restatement of the Law 2d, Torts, *supra*, Sections 357 and 362; Prosser, *supra*, Section 63. In the case at hand, it is undisputed that the apartment was in the exclusive possession of Daugherty when the fumes from the fire in his apartment overtook Burnside.

{¶ 13} At early common law, a landlord generally was immune from tort liability for any injuries sustained by any person due to dangerous conditions on a leased premises in the exclusive possession of a tenant, even if the dangerous condition existed at the commencement of the tenancy. *Burdick v. Cheadle* (1875),

26 Ohio St. 393; *Stackhouse v. Close* (1911), 83 Ohio St. 339, 94 N.E. 746; *Berkowitz v. Winston* (1934), 128 Ohio St. 611, 1 O.O. 269, 193 N.E. 343; *Ripple v. Mahoning Natl. Bank* (1944), 143 Ohio St. 614, 28 O.O. 508, 56 N.E.2d 289; *Cooper v. Roose* (1949), 151 Ohio St. 316, 39 O.O. 145, 85 N.E.2d 545; *Brown v. Cleveland Baseball Co.* (1952), 158 Ohio St. 1, 47 O.O. 478, 106 N.E.2d 632; *Pitts v. Cincinnati Metro. Hous. Auth.* (1953), 160 Ohio St. 129, 51 O.O. 51, 113 N.E.2d 869.  Absent fraud or an agreement to the contrary, a landlord simply owed no one a legal duty with regard to dangerous conditions upon a leased premises in the exclusive possession of a tenant.  See 5 Harper & James, *supra*, Section 27.16; Prosser, *supra*, at 434-435; Page, *supra*, at 180; 2 Restatement of Torts, *supra*, (1965), Section 356, Comment *a*.

{¶ 14} The legal duty that a landlord owes a tenant is not determined by the common-law classifications of invitee, licensee, and trespasser under the law of premises liability; instead, a landlord's liability to a tenant is determined by a landlord's common-law immunity from liability and any exceptions to that immunity that a court or a legislative body has created.  See, *e.g*., 2 Restatement of Torts, *supra*, Sections 355 to 362; Annotation, *supra*, 64 A.L.R.3d 339.  In point of fact, the exceptions nearly have swallowed up the general rule of landlord immunity.[2]  Some of the commonly accepted exceptions that give rise to landlord liability include the following: concealment or failure to disclose known, nonobvious latent defects; defective premises held open for public use; defective

---

2. Legal commentators have criticized the common-law immunity enjoyed by landlords in the past. See Quinn & Phillips, The Law of Landlord-Tenant:  A Critical Evaluation of the Past With Guidelines for the Future (1969), 38 Fordham L. Rev. 225.  According to 2 Restatement of Torts, supra, at 240-241, Section 356, Comment a, the growing number of exceptions to a landlord's common-law immunity "have been due in large part to increasing recognition of the fact that tenants who lease defective premises are likely to be impecunious and unable to make the necessary repairs which their own safety and that of others may demand; that one who is in possession of the premises only for a limited term does not have the same incentive to maintain them in good condition as the lessor to whom they will revert at the end of the lease; and that the landlord who receives benefit from the transaction in the form of rent may properly be required to assume in return at least certain limited obligations with respect to the safety of others."

areas under the landlord's control; failure to perform a covenant to repair; breach of a statutory duty; and negligent performance of a contractual or statutory duty to repair.[3] See Annotation, *supra*, 64 A.L.R.3d 339; 5 Harper & James, *supra*, Section 27.16; Prosser, *supra*, at 436-446; Page, *supra*, at 179-198, 218-220.[4]

{¶ 15} In *Stackhouse v. Close* (1911), 83 Ohio St. 339, 94 N.E. 746, paragraph one of the syllabus, this court expressly accepted some of these exceptions by stating, "A lessor of a building out of possession and control is not liable to the tenant or other person rightfully on the premises for their condition, in the absence of deceit or of any agreement or *liability created by statute*." (Emphasis added). See, also, *Shroades v. Rental Homes, Inc*. (1981), 68 Ohio St.2d 20, 23, 22 O.O.3d 152, 154, 427 N.E.2d 774, 777 (noting that the "breach of a duty imposed by statute has been one exception to the landlord's immunity from tort claims"). R.C. 5321.04 is one of the statutory exceptions to a landlord's common-law immunity and has expanded the duties a landlord owes to "persons using rented residential premises." *Shroades* at 25, 22 O.O.3d at 155, 427 N.E.2d at 778.

{¶ 16} We do not distinguish between the duties a landlord owes to a tenant and the duties a landlord owes to other persons lawfully upon the leased premises. See *Caldwell v. Eger* (App.1929), 8 Ohio Law Abs. 47: "'It is the well settled general rule that the duties and liabilities of a landlord to persons on the leased

---

3. If these listed exceptions apply, a landlord's duty is defined by general principles of negligence. See, *e.g., Davies v. Kelley* (1925), 112 Ohio St. 122, 146 N.E. 888, paragraph one of the syllabus (imposing upon a landlord a duty to exercise ordinary care to keep portions of a leased premises that remain under the control of the landlord in a reasonably safe condition). See, also, 5 Harper & James, *supra*, at 293.

4. Recently, some state courts even have abrogated the traditional landlord tort immunity altogether and have imposed upon a landlord a general duty to exercise reasonable care. See *Sargent v. Ross* (1973), 113 N.H. 388, 308 A.2d 528; *Pagelsdorf v. Safeco Ins. Co. of America* (1979), 91 Wis.2d 734, 284 N.W.2d 55; *Young v. Garwacki* (1980), 380 Mass. 162, 402 N.E.2d 1045; *Mansur v. Eubanks* (Fla. 1981), 401 So.2d 1328; *Corrigan v. Janney* (1981), 192 Mont. 99, 626 P.2d 838; *Stephens v. Stearns* (1984), 106 Idaho 249, 678 P.2d 41; *Becker v. IRM Corp* (1985), 38 Cal.3d 454, 213 Cal. Rptr. 213, 698 P.2d 116; *Turpel v. Sayles* (1985), 101 Nev. 35, 692 P.2d 1290; *Favreau v. Miller* (1991), 156 Vt. 222, 591 A.2d 68.

premises by the license of the tenant are the same as those owed to the tenant himself.  For this purpose they stand in his shoes. *** The guest, servant, etc., of the tenant is usually held to be so identified with the tenant that this right of recovery for injury as against the landlord is the same as that of the tenant would be had he suffered the injury.'"  *Id.* at 47, quoting 16 Ruling Case Law (1917) 1067, Section 588.  See, also, *Defiance Water Co. v. Olinger* (1896), 54 Ohio St. 532, 538, 44 N.E. 238, 239; *Davies v. Kelley* (1925), 112 Ohio St. 122, 146 N.E. 888, paragraph two of the syllabus; *Harrison v. Struich* (App.1935), 19 Ohio Law Abs. 374, 377.

{¶ 17} The proposition that a landlord owes the same duties to persons lawfully upon the rental property as the landlord owes to the tenant is not unique to Ohio.  Restatement of the Law 2d, Property (1977), Sections 17.6[5] and 19.1 and 2 Restatement of Torts, *supra*, Sections 357, 358, and 419, do not distinguish between the duties that a landlord owes a tenant and the duties that the landlord owes others upon the leased property with the consent of the tenant.  See, also, Annotation (1952), 25 A.L.R.2d 598, 616; Annotation, *supra*, 64 A.L.R.3d 339.

{¶ 18} For the foregoing reasons, we hold that a landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant.  Consequently, it is improper to treat a tenant's guest as a licensee with regard to a landlord and to hold that a landlord merely owes a tenant's guest the duty to refrain from wanton or willful misconduct.  We, therefore, reject the reasoning of *Rose v. Cardinal Industries, Inc.* (1990), 68 Ohio App.3d 406, 588 N.E.2d 947, and *Seiger v. Yeager* (1988), 44 Ohio Misc.2d 40, 542 N.E.2d 1119.

---

5. Although Restatement of the Law 2d, Property (1977), Section 17.6, does not technically apply to this case because it concerns cases in which a landlord has "failed to exercise reasonable care to repair [a dangerous] condition" in violation of a duty created by statute, it makes clear the concept that unless a statute indicates otherwise, there is no distinction between the statutory duties that a landlord owes to a tenant and the duties that a landlord owes to "others upon the leased property with the consent of the tenant."

**{¶ 19}** We do not believe that the Landlords and Tenants Act of 1974, R.C. Chapter 5321, alters this well-settled common law principle. "Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law *unless the language employed by it clearly expresses or imports such intention*." (Emphasis added.) *State ex rel. Morris v. Sullivan* (1909), 81 Ohio St.79, 90 N.E. 146, paragraph three of the syllabus. See, also, *Bresnik v. Beulah Park Ltd. Partnership, Inc.* (1993), 67 Ohio St.3d 302, 304, 617 N.E.2d 1096, 1098. Thus, the obligations imposed upon a landlord under R.C. 5321.04 would appear to extend to tenants and to other persons lawfully upon the leased premises. R.C. 5321.12 states, "In any action under Chapter 5321 of the Revised Code, *any party* may recover damages for the breach of contract or the breach of any duty that is imposed by law." (Emphasis added.)

**{¶ 20}** *Stackhouse*, *supra*, paragraph one of the syllabus, quoted above, and *Marqua v. Martin* (1923), 109 Ohio St. 56, 141 N.E. 654, paragraph one of the syllabus, clearly hold that a landlord may be held liable to a tenant's guest for the breach of a statutory duty imposed upon the landlord. We reiterate that holding today. Turning to the case at hand, Sections 92.112 and 92.117(D) and (G) of the Dayton City Ordinances imposed certain duties upon First Continental, as the owner of the Robinwood Estates, regarding the number, placement, and installation of smoke detectors in the apartments. There is no doubt that the purpose of this fire code was to protect any individual in an apartment from the risks created by a fire. Therefore, Burnside was within the class of persons intended to be protected by the ordinances, and her death was the type of harm against which the ordinances were intended to guard.

**{¶ 21}** The questions that remain regarding First Continental's liability are whether it breached its duty under the city ordinances with regard to Burnside,

using the standard noted above as opposed to a standard of wanton or willful misconduct, and whether this breach, if any, was the proximate cause of Burnside's death. Because the issue has not been argued, we do not decide whether the city ordinances imposed upon First Continental an absolute duty or a duty to exercise reasonable care. For the same reason, we also leave open the question as to whether First Continental complied with the requirements of the city ordinances by having only one smoke detector installed in Daugherty's apartment.

{¶ 22} The fact that First Continental hired Goessl, an independent contractor, to install the smoke detector in Daugherty's apartment does not affect First Continental's liability, if any, in this case. A landlord may not shift to an independent contractor the responsibility of complying with laws designed for the physical safety of others. Such duties are nondelegable. Restatement of the Law 2d, Property, *supra*, Section 19.1, provides, "A landlord who employs an independent contractor to perform a duty which the landlord owes to his tenant to maintain the leased property in [a] reasonably safe condition is subject to liability to the tenant, and to third persons upon the leased premises with the consent of the tenant, for physical harm caused by the contractor's failure to exercise reasonable care to make the leased property reasonably safe." 2 Restatement of Torts, supra, Section 424, states, "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

{¶ 23} For the foregoing reasons, the court of appeals did not err in reversing the trial court's grant of First Continental's motion for summary judgment. The judgment of the court of appeals is affirmed, albeit for different reasons, and the cause is remanded to the trial court to determine whether First Continental

breached its duties that it owed Burnside under the city ordinance and whether this breach, if any, was the proximate cause of Burnside's death.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur in the syllabus and judgment only.

———————————