[Cite as *Coeurvie v. McGonigal*, 2014-Ohio-4321.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SHARRON COEURVIE

    Appellant

    v.

RICHARD MCGONIGAL, et al.

    Appellees

C.A. No.     27095

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2012 01 0487

DECISION AND JOURNAL ENTRY

Dated: September 30, 2014

---

BELFANCE, Presiding Judge.

{¶1} Sharron Coeurvie appeals the trial court's award of summary judgment in favor of defendants Richard McGonigal, Wendy McGonigal, and Treasure Loft Properties, LLC (collectively, "the Defendants"). For the reasons set forth below, we affirm in part[1] and reverse in part.

I.

{¶2} In March 2010, Ms. Coeurvie, while looking for a location to live and operate a business, inspected a home owned by Treasure Loft Properties, a limited liability company owned by Mr. and Mrs. McGonigal. The McGonigals were not present during Ms. Coeurvie's inspection of the home but were represented by Mr. McGonigal's father. During Ms. Coeurvie's inspection, she observed mold in the bedroom closet, which was located behind the shower, and

---

[1] Ms. Coeurvie has not challenged the trial court's award of summary judgment on her claim that the defendants violated Summit County Health Code sections 1668.02 and 1668.07.

brought it to the attention of Mr. McGonigal's father. Mr. McGonigal's father told Ms. Coeurvie that the moisture she saw was typical in a home of that age.

{¶3} Ms. Coeurvie subsequently leased the property in April 2010 and lived there sporadically until the fall of 2010 after which time she lived in the home on a full-time basis. On February 19, 2011, Ms. Coeurvie e-mailed Mr. McGonigal to tell him that she was experiencing moisture in a cupboard in her bedroom as well as the closet, causing her to have to wash the clothes and blankets that she had been storing there. She e-mailed Mr. McGonigal again on February 23, 2011, to ask him to do something about the mold in the house, asserting that she would wake up with a sore throat and nasal congestion. She wrote another e-mail the next day and told Mr. McGonigal that she could not sleep in the bedroom any longer due to the mold. Ms. Coeurvie moved out of the house and eventually was diagnosed with medical conditions related to exposure to mold.

{¶4} Ms. Coeurvie filed a complaint against the Defendants, asserting claims of negligence, negligence per se, and a violation of Summit County Health Code sections 1668.02 and 1668.07. Following a period of discovery, the Defendants moved for summary judgment, arguing that there was no genuine issue of material fact as to their lack of notice or constructive notice of the mold. Ms. Coeurvie responded in opposition, and the Defendants replied. The trial court granted the Defendants' motion for summary judgment and dismissed all of Ms. Coeurvie's claims.

{¶5} Ms. Coeurvie has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT
WHEN FACTUAL ISSUES EXISTED REGARDING NOTICE[.]

{¶6} In Ms. Coeurvie's first assignment of error, she argues that the trial court erred in granting summary judgment on her claims of negligence and negligence per se because there was a genuine issue of material fact as to whether the Defendants had actual or constructive notice of the mold. We agree.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.

{¶8} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant "bears the initial burden of *demonstrating* that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

{¶9} Ms. Coeurvie pleaded both negligence and negligence per se causes of action. "'To prevail in a negligence action, the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach.'" *Hackett v. TJ Maxx*, 9th Dist. Summit No. 24978, 2010-Ohio-5824, ¶ 12, quoting *Robinson v. Bates*, 112 Ohio

St.3d 17, 2006-Ohio-6362, ¶ 21. "At early common law, a landlord generally was immune from tort liability for any injuries sustained by any person due to dangerous conditions on a leased premises in the exclusive possession of a tenant, even if the dangerous condition existed at the commencement of the tenancy." *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417 (1994). However, there are exceptions to this general immunity, including "concealment or failure to disclose known, nonobvious latent defects; defective premises held open for public use; defective areas under the landlord's control; failure to perform a covenant to repair; breach of a statutory duty; and negligent performance of a contractual or statutory duty to repair." *Id.* at 418. "R.C. 5321.04 is one of the statutory exceptions to a landlord's common-law immunity and has expanded the duties a landlord owes to persons using rented residential premises." (Internal quotations and citations omitted.) *Id.* at 419.

{¶10} R.C. 5321.04(A) provides, in pertinent part for this appeal, that "[a] landlord who is a party to a rental agreement shall * * * (1) [c]omply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety[, and] (2) [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]" R.C. 5321.04(A)(1)-(2). "A landlord's violation of the duties imposed by R.C. 5321.04 (A)(1) or 5321.04(A)(2) constitutes negligence per se, but a landlord will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." (Emphasis omitted.) *Sikora v. Wenzel*, 88 Ohio St.3d 493 (2000), syllabus.

{¶11} The trial court determined that there was no dispute of material fact that the Defendants were unaware of the mold that caused Ms. Coeurvie's injuries. In reaching its determination, it relied on the affidavit of Mr. McGonigal in which he denied he or his wife had

ever seen or had knowledge of mold in the home prior to Ms. Coeurvie's February 23, 2011 e-mail. However, while the summary judgment evidence[2] may not establish that the Defendants had actual knowledge of the toxic mold, Ms. Coeurvie's deposition testimony[3] and the report of her expert Connie Morbach at least establish a dispute of fact as to whether the Defendants *should have known* about the mold. *See Sikora* at syllabus.

{¶12} Ms. Coeurvie testified during her deposition that, when she was viewing the house, she noticed mold growing in the bedroom closet on the wall that abutted the shower in the bathroom. She mentioned the mold to Mr. McGonigal's father, who was showing her the house, and he told her "'It's normal for places where there's moisture like in the shower.'" While Ms. Coeurvie did not request that the mold be remedied at that time, she did bring the existence of mold to the attention of the Defendants' representative who then, instead of investigating further, assured her that the mold was normal.

{¶13} Ms. Morbach opined in her report that her inspection of the home revealed long-term water damage. According to Ms. Morbach, the water intrusions dated back decades. Ms. Morbach also noted that there were indications that repairs had been attempted but that those

---

[2] Ms. Coeurvie submitted a number of unauthenticated documents in support of her motion in opposition to summary judgment that she now references in her appellate brief. "Unauthenticated documents and affidavits not based on personal knowledge have no evidentiary value and should not be considered by the court in deciding whether summary judgment is appropriate. Nonetheless, this Court has held that unless the opposing party objects to the admissibility of improper evidence, the trial court may, but need not consider the evidence." (Internal quotations and citations omitted.) *Cheriki v. Black River Industries, Inc.*, 9th Dist. Lorain No. 07CA009230, 2008-Ohio-2602, ¶ 6). However, the Defendants did object to Ms. Coeurvie's documents and, therefore, they cannot be considered. *See id.*

[3] We note that Ms. Coeurvie's deposition is not signed by the court reporter who took it. *See* Civ.R. 30(F)(1)(a). However, both parties referred to portions of Ms. Coeurvie's deposition, and the trial court considered it in rendering its decision. *See Wallner v. Thorne*, 189 Ohio App.3d 161, 2010-Ohio-2146, ¶ 18 (9th Dist.) ("The trial court retains discretion to either consider or ignore improper Civ.R. 56 evidence, however, when there has not been any objection to the evidence."). Therefore, we consider it as well.

attempted repairs did not remedy the water damage. Instead, the repairs essentially concealed the evidence of the damage.

{¶14} Ms. Morbach's expert opinion that water damage had been continuous and long-term, when viewed in the light most favorable to Ms. Coeurvie, would create the inference that the Defendants were aware of the water damage and possibly even the intrusions themselves given that they had owned the home for a number of years. *See Waugh v. Lynch*, 8th Dist. Cuyahoga No. 100432, 2014-Ohio-1087, ¶ 10 ("In order to show that a landlord had constructive notice, an injured plaintiff has the burden of showing that the defect in question must have existed for such a length of time that the landlord, by exercising reasonable care, should have discovered it.") (Internal quotations, citations, and emphasis omitted.). Given this knowledge, Ms. Coeurvie's statement to Mr. McGonigal's father, that she observed mold in the closet, should have at least prompted some investigation in order to insure that the residence was in a habitable condition. *See* R.C. 5321.04(A)(2) ("A landlord who is a party to a rental agreement shall * * * [m]ake all repairs and *do whatever is reasonably necessary* to put and *keep* the premises in a fit and habitable condition[.]") (Emphasis added.). Thus, Ms. Coeurvie's summary judgment materials demonstrated that there was a material dispute as to whether the Defendants should have known about the mold in this case.[4] *See Waugh* at ¶ 10.

{¶15} Accordingly, Ms. Coeurvie's first assignment of error is sustained.

---

[4] The Defendants incorrectly suggest that Ms. Coeurvie raises the issue of constructive notice for the first time on appeal. While Ms. Coeurvie's motion in opposition to summary judgment is not elegantly drafted, it does contain facts and arguments concerning constructive notice.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT ALLOWED APPELLEES TO SUBMIT NEW EVIDENCE AND EXPERT REPORTS ALONG WITH THEIR REPLY BRIEF IN CONTRAVENTION OF THE LOCAL RULES OF COURT AND FUNDAMENTAL FAIRNESS[.]

{¶16} Ms. Coeurvie argues in her second assignment of error that the trial court improperly permitted the Defendants to submit additional evidence with their reply brief. However, the trial court did not grant the Defendants' motion to submit additional evidence and did not consider the evidence. Furthermore, given our resolution of Ms. Coeurvie's first assignment of error, this assignment of error is moot. *See* App.R. 12(A)(1)(c). Accordingly, it is overruled.

III.

{¶17} Ms. Coeurvie's first assignment of error is sustained, and her second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is reversed to the extent it awarded summary judgment on Ms. Coeurvie's negligence per se and negligence claims, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOHN F. BURKE, III, Attorney at Law, for Appellant.

JAMES J. GUTBROD, Attorney at Law, for Appellees.