JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant James Pojman ("appellant") appeals from the trial court's decision. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} According to the facts in the case sub judice, on February 2, 2001, appellant drove his vehicle to visit his brother, Michael Pojman ("Michael"), who lived at 11221 Florian Avenue, Cleveland, Ohio. Appellant arrived with his friend, Lloyd Culpepper. He exited his vehicle and proceeded to walk around the back of his truck toward the passenger side to assist his friend who was carrying bags into the house.[1] Appellant walked approximately halfway across the driveway and then slipped and fell on the ice.[2]
 {¶ 3} Appellant filed his complaint for personal injury on January 30, 2003, and appellees filed their answer on April 4, 2003. Appellees filed their motion for summary judgment on August 18, 2003, and on September 19, 2003, appellant filed his brief in opposition. Thereafter, several motions pertaining to discovery were filed. On November 22, 2003, after receiving an extension, appellees filed their reply brief to the appellant's brief in opposition to the motion for summary judgment. On November 28, 2003, the trial court granted the appellees' motion for summary judgment. On December 4, 2003, appellant filed his motion for leave to file a reply to the additional brief filed by the appellees; on that same date the appellant also filed his response to the reply brief filed by the appellees. On December 10, 2003, the appellant filed a motion for reconsideration and/or Civ.R. 60(B) relief from judgment. On December 23, 2003, the trial court overruled appellant's motion for relief from judgment. On December 24, 2003, appellant filed his notice of appeal with this court.
 II. {¶ 4} Appellant's first assignment of error states that the "court erred and abused its discretion in granting summary judgment to the defendant/appellees because the plaintiff appellant submitted materials from which reasonable minds could have concluded that the defendant-appellees breached the duty of reasonable care they owed to the plaintiff-appellant."
 {¶ 5} Appellant's second assignment of error states that the "court erred and abused its discretion in granting summary judgment to the defendant/appellees because the plaintiff appellant submitted materials from which reasonable minds could have concluded that the ice which caused the fall of the plaintiff-appellant was not open and obvious."
 {¶ 6} Appellant's third assignment of error states that the "court erred and abused its discretion in granting summary judgment to the defendant/appellees because under the correct Ohio precedent the plaintiff-appellant was not a mere licensee, but was a social guest who was owed the duty of reasonable care."
 {¶ 7} Appellant's fourth assignment of error states that the "court erred and abused its discretion in granting summary judgment to the defendant/appellees because even if the plaintiff-appellant were to be considered a licensee, the plaintiff-appellant submitted evidentiary material in opposition to the motion for summary judgment from which reasonable minds could conclude that the defendant-appellees acted recklessly."
 {¶ 8} Appellant's fifth assignment of error states that the "court erred and abused its discretion when it granted summary judgment in favor of the defendant-appellants [sic] because the court neither affirmatively indicated it was disregarding the new legal theory of the defendant-appellees set forth in their reply brief to the appellant's brief in opposition to the motion for summary judgment, nor did it provide the plaintiff-appellant an opportunity to respond to that new legal theory."
 {¶ 9} Due to the substantial interrelation of appellant's assignments of error and for the sake of judicial economy, we shall address appellant's first five assignments of error together in this section.
 {¶ 10} This court reviews the lower court's granting of summary judgment de novo in accordance with the standards set forth in Civ.R. 56(C). North Coast Cable v. Hanneman (1994),98 Ohio App.3d 434, 440. In order for summary judgment to be properly rendered, it must be determined that:
"(1) no genuine issue of material fact remains to belitigated; (2) the moving party is entitled to judgment as amatter of law; and (3) it appears from such evidence thatreasonable minds can come to but one conclusion and, reviewingsuch evidence most strongly in favor of the party against whomthe motion for summary judgment is made, that conclusion isadverse to the party."
 Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, State ex. rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 448.
 {¶ 11} A landowner has no duty to remove natural accumulations of ice and snow because the dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover and protect himself against them. This rule applies regardless of whether injuries are sustained by a business invitee or a tenant.McCornell v. Bridges, 124 Ohio App.3d 610.
 {¶ 12} In LaCourse v. Fleitz (1986), 28 Ohio St.3d 209,210-211, the court found any distinction between a business invitee and a tenant immaterial: "Where the lease itself imposes no contractual duty on the landlord to clear accumulated ice and snow from the common areas, we see no compelling reason to impose it judicially on a landlord when we have refused to recognize any such duty on the part of business owners and occupiers." Id. at 211.
 {¶ 13} Where a lease itself imposes no contractual duty on the landlord to clear accumulated ice and snow from the common areas, we see no compelling reason to impose it judicially on a landlord when we have refused to recognize any such duty on the part of business owners and occupiers. McCornell v. Bridges,
supra.
 {¶ 14} In the case at bar, appellant did not submit conclusive evidence to show he and appellees had a contractual agreement regarding appellees' duty to salt or otherwise maintain the driveway in an extraordinary fashion. Absent such evidence, appellees owed no duty to remove the natural accumulations of snow and ice that formed on the driveway.
 {¶ 15} We find that the evidence in the case sub judice demonstrates that appellees did not breach the duty of care owed to the appellant.
 {¶ 16} Appellant's first assignment of error is overruled.
 {¶ 17} The Supreme Court of Ohio continues to adhere to the open and obvious doctrine. In reaching this conclusion, the Supreme Court reiterates that when courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of a plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Even under the rule finding liability when a landowner should have anticipated harm caused by obvious dangers, the Supreme Court believes the focus is misdirected because it does not acknowledge that the condition itself is obviously hazardous and that, as a result, no liability is imposed. Consequently, the Supreme Court holds that the open and obvious doctrine remains viable in Ohio. Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.Armstrong v. Best Buy Co., 99 Ohio St.3d 79.
 {¶ 18} The Supreme Court of Ohio noted that a landlord does not have a duty to clear natural accumulations of snow and ice from common areas of the leased premises unless it is shown that the landlord had superior knowledge of the particular danger which caused the injury. Accumulations are "obvious and apparent" so that a landlord may reasonably expect that a tenant will take measures to protect himself or herself against them. Moore v.Lupica Towers, Cuyahoga App. No. 71551, 1997-Ohio-5095.
 {¶ 19} In Brinkman v. Ross, 68 Ohio St.3d 82, the Supreme Court of Ohio stated that "living in Ohio during the winter has its inherent dangers. Recognizing this, we have previously rejected the notion that a landowner owes a duty to the general public to remove natural accumulations of ice and snow from public sidewalks which abut the landowner's premises, even where a city ordinance requires the landowner to keep the sidewalks free of ice and snow." Also, see, Lopatkovich v. Tiffin (1986),28 Ohio St.3d 204, 206-207.
 {¶ 20} In addition, Brinkman v. Ross, supra, further stated that a homeowner has no common-law duty to remove or make less hazardous a natural accumulation of ice and snow on private sidewalks or walkways on the homeowner's premises, or to warn those who enter upon the premises of the inherent dangers presented by natural accumulations of ice and snow.[3]
 {¶ 21} In the case sub judice, there is no evidence that the alleged condition was latent or concealed. The driveway ice patch was open and obvious. It was a cold northeastern Ohio day in early February and weather conditions were typical for that time of year. Appellant stated in his deposition that he noticed the ice before he fell.[4] Michael claims that the gutters were an issue and that he informed appellees about the need to repair them. However, he never warned appellant about the conditions of the gutters and the driveway after it rained, despite his brother's prior medical condition.[5] If Michael felt the gutter conditions were not dangerous enough to mention to his brother, we can only speculate. In addition, Michael did not consider the gutter conditions dangerous enough to deposit his rent money with the clerk of courts, as allowed by R.C. 5321, for repair of gutters or any other problems with the premises.[6]
 {¶ 22} Michael does not know where the ice came from and did not actually see his brother fall. For example, Michael stated in his deposition that he does not even know for certain where the water or ice came from when appellant fell.
"Q. I have one follow-up from Mr. Obral's question about thatphotograph, that Exhibit F. The day that your brother Jim fell inFebruary, where did the ice that formed, do you know where itstarted, where the water came from exactly?
 "A. No, I couldn't tell you. I could not tell you at all.* * *"[7]
 {¶ 23} Michael further stated in his deposition that he did not actually see his brother fall.
"Q. And you're also indicating that you did not actually seehim?
 "A. No, I did not.
 "Q. Okay. So in number 7, walked — James Pojman walked towardthe rear of his truck, you didn't see him walk toward the rear ofhis truck?
 "A. No, I did not see him.
 "Q. And you didn't see him slip he slipped and fell, it said,it reads here, you didn't see that?
 "A. No, I did not."[8]
 {¶ 24} Because no one actually saw appellant fall in the driveway on February 2, 2001, we do not have direct observational testimony as to the fall itself, outside of what appellant proffered. In addition, appellant had extensive pre-existing medical problems with his back and was taking medication. Again, we do not know what, if any, effect this had on the fall. Appellant is not sure what, if any, medication he was taking on the day of his injury.[9] Although these facts may impact damages, they do not change the fact that the winter ice was an open and obvious condition to which appellant should have been aware. In addition, based on appellees' actions and the evidence above, we find that the appellees did not act recklessly.
 {¶ 25} Appellant's second and fourth assignments of error are overruled.
 {¶ 26} Generally, social guests of tenants are properly classified as invitees and a landlord thus owes them a duty of ordinary care. In this regard, we agree with the reasoning set forth in Martin v. Konstam (1992), 62 Ohio Misc.2d 507, 511:
" * * * Perhaps no direct benefit accrues to a landlord fromthe presence of a tenant's business invitee. To be sure thepresence of employees and/or patrons do enable the tenant toconduct a profitable business, which in turn incidentallybenefits a landlord through timely rental payments and leaserenewals. Similarly, a landlord who prohibited a tenant'svisitors might experience great difficulty in renting orrerenting his apartments. Thus, it is implied in law that theinvitees of the tenant are invitees of the landlord, and thelandlord owes them a duty of reasonable care. * * *
 "Therefore, the ruling in Davies that a landlord retainingcontrol of common areas owes a duty of ordinary care to atenant's family, employees, and guests is applicable in thisjurisdiction and to the case at bar. Quite obviously, a contraryruling would be bizarre in that an elevator containing a tenantand a tenant's guest could fall and the tenant could recover forinjuries, but the other passenger could not. Surely, the lawcould not be thus."
 {¶ 27} The Supreme Court of Ohio held that a landlord owes the same duties to persons lawfully upon premises as the landlord owes to the tenant, namely, a duty of ordinary care. Shump v.First Continental-Robinwood Association (1994),71 Ohio St.3d 414. In the case at bar, appellees state in their brief that the Ninth District Court of Appeals precedent indicates that the landlord need only refrain from wanton and willful misconduct. Although that may eventually be the case in this district, it is unnecessary for us to conduct that analysis. This is because based on the evidence in the case at bar, the appellees' actions in the case satisfy the higher burden of ordinary care. Therefore, we need not address the wanton and willful misconduct standard at this juncture. We find that the evidence discussed above aptly demonstrates that appellees' conduct satisfied the ordinary duty of care owed to appellant. In addition, we find no merit to appellant's claim that the trial court erred and abused its discretion when it granted summary judgment in favor of the defendants-appellees.
 {¶ 28} Appellant's third and fifth assignments of error are overruled.
 {¶ 29} Accordingly, appellant's first, second, third, fourth, and fifth assignments of error are overruled.
 III. {¶ 30} Appellant's sixth assignment of error states that "the trial court erred and abused its discretion when it overruled the plaintiff-appellant's Civ.R. 60(B) motion for relief from judgment."
 {¶ 31} Appellant only listed the trial court's decision of November 28, 2003 in his appeal to this court. Appellant's notice of appeal filed with this court on December 24, 2003 states the following:
"Now comes Plaintiff, James Pojman, by and through counsel,and hereby appeal[s] to the Court of Appeals of Ohio, EighthAppellate District, from the final judgment entered in thisaction on the 28th day of November 2003."
 {¶ 32} The trial court record indicates that the journal entry of November 28, 2003, states the following:
"Motion of Alan Bryson and Cynthia Smith (filed 08/18/2003)for summary judgment is granted. The court, having construed theevidence most strongly in favor of the non-moving party,determines that reasonable minds can come to but one conclusion,that there are no genuine issues of material fact, and that AlanBryson and Cynthia Smith are entitled to judgment as a matter oflaw. Court cost assessed to the plaintiff(s). Book 3029 Page 89411/28/2003 Notice Issued."
 {¶ 33} App.R. 3(D) governs the content of the notice of the appeal. App.R. 3(D) provides:
"(D) Content of the notice of appeal. The notice of appealshall specify the party or parties taking the appeal; shalldesignate the judgment, order or part thereof appealed from; andshall name the court to which the appeal is taken. The title ofthe case shall be the same as in the trial court with thedesignation of the appellant added, as appropriate. Form 1 inAppendix of Forms is a suggested form of a notice of appeal."
(Emphasis added.)
 {¶ 34} Appellant appealed the November 28, 2003 journal entry exclusively and did not mention the August 18, 2003 summary judgment in his appeal with this court. Appellant did not include the denial of his motion for reconsideration in his December 24 appeal and, as such, he is unable to appeal the trial court's denial of his motion for reconsideration. Civ.R. 60(B).
 {¶ 35} Appellant's sixth assignment of error is, therefore, overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Gallagher, J., concur.
[1] Deposition of appellant, pp. 34-35.
[2] Deposition of appellant, p. 34.
[3] {¶ a} The court stated the following: "Accordingly, we hold that a homeowner has no common-law duty to remove or make less hazardous a natural accumulation of ice and snow on private sidewalks or walkways on the homeowner's premises, or to warn those who enter upon the premises of the inherent dangers presented by natural accumulations of ice and snow. Therefore, appellants were entitled to judgment as a matter of law since their failure to remove the ice and snow, or to warn the Brinkmans of the natural hazard, does not give rise to a claim for negligence.
{¶ b} "Amicus Ohio Academy of Trial Lawyers has invited us to abolish any and all distinctions that may currently exist in Ohio regarding the duties owed by landowners to those classified in the law as `social guests,' as opposed to those classified as `business invitees.' However tempting that choice may be, we determine there is no distinction between the duties of a homeowner to a social guest on the one hand and to a business invitee on the other hand concerning natural accumulations of ice and snow on sidewalks or walkways on the homeowner's premises. Whatever the classification of the entrant upon the premises, there exists no duty for the homeowner to remove or make less hazardous natural accumulations of ice and snow. Thus, this particular case is not the appropriate vehicle to consider the position urged by amicus." Brinkman v. Ross, 68 Ohio St.3d 82,85.
[4] Appellant's deposition, pp. 35-36. "Q. Describe the ice. What size area of the driveway had this ice? A. I didn't get to inspect the driveway. I know the area where I fell was wet. You could definitely see a sheet of ice. It was, basically, the color of the concrete. It was a wet color, brownish color. Q. Did you notice the color before you fell? A. Yes." (Emphasis added.)
[5] Deposition of Michael Pojman, pp. 115-117.
[6] Deposition of Michael Pojman, p. 119.
[7] Deposition of Michael Pojman, p. 132.
[8] Deposition of Michael Pojman, p. 92.
[9] Deposition of appellant, p. 29.