[Cite as *Gibbs v. Mark Porter Autoplex, Inc.*, 2023-Ohio-3460.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| Dianna L. Gibbs, | : | Case No. 23CA3 |
| Plaintiff-Appellant-Cross-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| Mark Porter Autoplex, Inc., et al., | : | |
| Defendants-Appellees-<br>Cross-Appellants. | : | **RELEASED 9/25/2023** |

_____

<u>APPEARANCES</u>:

Jeffrey L. Finley, Esq., Finley & Eachus, Attorneys at Law, Gallipolis, Ohio, for appellant/cross-appellee.

Trent M. Thacker, Cury Roby, LLC, Columbus, Ohio, for appellees/cross-appellants.
_____

Hess, J.

**{¶1}** Dianna L. Gibbs appeals and Mark Porter Autoplex, Inc., Mark Porter Autogroup, Inc.,[1] and Porter Pomeroy, LLC (collectively, "appellees") cross-appeal from a judgment of the Meigs County Court of Common Pleas granting the appellees' motion for summary judgment in a negligence action. Gibbs presents one assignment of error asserting that the trial court erred in granting the motion. For the reasons which follow, we overrule her sole assignment of error and affirm the trial court's judgment. This decision renders moot the appellees' cross-assignment of error, which asserts that the trial court properly granted summary judgment but did so for the wrong reason.

_____

[1] Appellees refer to this party as Mark Porter Auto Group, Inc. We refer to it using the spelling in the caption of the complaint.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶2}** In April 2022, Gibbs re-filed a complaint against the appellees."[2] The complaint alleged that Porter Pomeroy, LLC, and Mark Porter Autoplex, Inc. "were in control, possession, and/or were the owners" of real property in Pomeroy, Ohio, where Mark Porter Autoplex, Inc., engaged in the business of buying and selling motor vehicles. The complaint alleged that on or about June 17, 2018, Gibbs was their "lawful business invitee," and while traversing their sales lot, "was caused to encounter a dangerous area in the pavement, which caused her to fall" and sustain "severe injuries."  The complaint alleged that Porter Pomeroy, LLC, and Mark Porter Autoplex, Inc. knew about the dangerous condition and design of the sales lot, that they failed to cure the condition or warn lawful business invitees like Gibbs of it, and that Gibbs' injuries were the direct and proximate result of their negligence.  The complaint did not make any specific allegations against Mark Porter Autogroup, Inc.

**{¶3}** Depositions were taken of Gibbs, her husband, her son, and Robert Eck, P.E., Ph.D.  Gibbs testified that she went to the Mark Porter Chevy Buick GMC dealership in Pomeroy, Ohio, with her husband and son because her husband wanted to look for a new truck there.  They arrived at the dealership around 2:00 or 2:30 p.m.  Gibbs knew before they arrived that the dealership would not be open because it was Sunday, so they could not purchase a vehicle that day.  However, she testified that the premises are always open and that there are no gates or no trespassing signs.  She drove up a road

---

[2] The complaint also named as defendants an "unknown corporation" and "unknown limited liability company" with unknown addresses.  The record does not reflect that Gibbs obtained personal service on these defendants within one year of filing her complaint; therefore, she did not commence an action against them.  *See Stubbs v. Sybene Missionary Baptist Church, Inc.*, 4th Dist. Lawrence No. 20CA9, 2021-Ohio-3454, ¶ 12.

on a hill, and there were trucks parked on both sides of the road, facing the road. She turned around and started driving back down the hill, and her husband asked her to see if there was a price on a specific truck. She stopped and walked to the driver's side door of the truck. She did not see a price, so her husband asked her to look on the passenger side. She walked to the front of the truck, and from there, she looked for a price on the passenger side. She "turned to come back," took a step, her "right foot turned," and she fell, sustaining injury.

{¶4}   Gibbs testified that the area where the trucks were parked was slightly higher than the road, that there was a slope between those areas, and that she believed the slope caused her fall. She thought that when she "walked in front of the truck" and "took that turn, there wasn't enough room for [her] to take that step," and her ankle "turned on that slope." Gibbs admitted she had to cross the slope to reach the elevated area where the truck was. She testified that she did not notice the slope or change in elevation at that time and "was focusing on the truck." There was some space between the slope and truck, and she was "pretty sure" she did not touch the slope when she went to look at the passenger side of the truck. Gibbs testified that photographs marked as exhibits accurately depicted the condition of the premises the day she fell except in some photographs, some vehicles were further back than they were the day she fell. She testified that the slope and surrounding area was the color of concrete, and there was no warning paint, yellow striping, or reflectors to warn of the elevation change. However, she testified that it was a sunny day, that there had been no recent precipitation, that the slope was not slick, and that nothing was covering the slope.

{¶5}    During Gibbs' first deposition, appellees' counsel asked if Gibbs believed she would have seen the slope if she looked down.  Gibbs' counsel objected and stated, "That's speculation.  You can answer."  Gibbs testified, "Yeah.  If I looked down I would have probably seen it."  During Gibbs' second deposition, appellees' counsel asked, "Do you remember your last deposition, I don't want to misquote you, but I believe you told me that if you had been looking down, you think you would have seen the slope, correct?  Gibbs testified, "Yeah, if I was looking down."

{¶6}    Gibbs' husband and son did actually not witness her fall but observed the area where the fall occurred.  Gibbs' husband testified that from inside a vehicle it was "kind of hard to see, like, a roll like that.  It looked like there wasn't really a clash.  It just looked like it was all together.  Your concrete was just, kind of from a distance it looked more level.  You didn't really notice that slope, that roll.  You didn't notice it."  When asked, "What about when you're close up to it?  Are you able to appreciate the difference when you look at it?" he testified, "Well, you might if you was [sic] looking down at it.  But if you was [sic] looking at the wheel of the truck or the hood or trying to see the years, you wasn't [sic] really paying any attention to it.  Because there was nothing there to bring your attention to [sic]."  Gibbs' son testified that initially he was not able to see the slope, but once he got closer to it, he could see the change in elevation.

{¶7}    Dr. Eck testified that that he has a Ph.D. in civil engineering with a specialization in transportation engineering.  Dr. Eck created a report setting forth his opinions, which was marked as an exhibit, and appellees' counsel questioned him regarding it.  Among other things, the report includes four "Figures," i.e., photographs of the premises, and the following statements:

- "[I]t is clear that this 'curb' was not installed for pedestrian use but rather was put in for the convenience of driving vehicles off of and onto the display areas."

- "The curb face at issue is too steep to walk on. The defendants compare the curb face to a curb ramp at intersection [sic]. This is a false and misleading comparison since the curb face at issue does not come close to meeting relevant accessibility criteria. The curb face is not a 'walking surface.' "

- "[A]s shown in Figure 1, the condition is deceptive since the vehicle travel way, the rolled curb itself, and the vehicle display area are all the same uniform concrete gray color. Thus, it is extremely difficult to distinguish one surface from another and particularly difficult to determine the slope of the curb."

- "[A]s illustrated in Figure 2, there is no distinctive color or texture difference to alert customers to the existence or location of the steeply sloping curb (single step). Figure 3 illustrates that due to the lack of contrast, neither the height nor the steepness of the curb can be perceived from above."

- "My site inspection and photographs such as Figure 4 indicated that the slope of the rolled curb is variable, that is, it is not uniform. The fact that the steepness of the curb varies along its length further complicates the pedestrian detection process."

- "There were no cues to emphasize the nature and location of the steeply-sloped curb and to draw attention to it. Under these circumstances, it is foreseeable that pedestrians will not detect the curb and that fall incidents will occur."

- "A different color and/or texture should have been used for the steeply sloped curb to make it conspicuous (and distinguishable from the other surfaces) to pedestrians."

- "The excessively steep, difficult-to-detect elevation change between the vehicle travel way and the vehicle display area is not appropriate for car dealerships where visitors include a wide range of people * * * with varying physical characteristics and footwear, including those who are not familiar with the facility."

- "The fall in question was a direct result of the lack of adequate design, construction, inspection and maintenance of the interface between the vehicle travel way and the vehicle display area at this dealership, in contravention of accepted safety standards and practices."

- "Had the dealership used one or more of the safeguards described herein, in all likelihood this fall would not have occurred."

Dr. Eck acknowledged that he is not a legal expert, was not testifying about what legal duty the appellees' owed, did not know the legal standard in Ohio for determining whether something is open and obvious, and was not offering an opinion on that topic. Additional photographs of the premises were marked as exhibits during Dr. Eck's deposition.

{¶8} The appellees moved for summary judgment. They asserted that Gibbs was a licensee, so their only duty was to refrain from willfully or wantonly causing her injury, and there was no evidence that they willfully or wantonly caused Gibbs injury. Alternatively, they asserted that even if Gibbs was an invitee, they had no duty to her for two reasons: (1) "the alleged danger of the slope was open and obvious," and (2) Gibbs had "constructive knowledge" of it. The appellees also asserted that Mark Porter Autogroup, Inc. was not a proper party and should be dismissed because it did not own or operate the premises—Porter Pomeroy, LLC, owned it, and Mark Porter Autoplex, Inc., operated it. Gibbs agreed that Mark Porter Autogroup, Inc., was not a proper party and should be dismissed but opposed a grant of summary judgment to Porter Pomeroy, LLC, and Mark Porter Autoplex, Inc.

{¶9} The trial court issued an entry on the motion for summary judgment stating that it had "considered arguments of the parties, affidavits, and transcripts of depositions." The court dismissed Mark Porter Autogroup, Inc. "[p]er agreement of the parties" and granted the summary judgment motion. The court found Gibbs was an invitee but explained "[t]here is no duty to protect business invitees from hazards which are obvious

and apparent and hazards which are reasonably expected to be discovered by the invitee." The court stated:

> The depositions made it clear that the areas and changing levels of elevations where Plaintiff traversed around a truck were open and obvious. There was nothing obstructing the view of the change of elevations when Plaintiff decided to get off the concrete roadway path area of the lot and to move up the curve to get a closer look at the vehicle; where those vehicles were parked at the raised elevation. The condition of the ground and changes in elevation around the truck was [sic] open and obvious and therefore no duty of care was breached by Defendants. The Plaintiff successfully negotiated the raised curve while initially stepping up to look at the truck. It was not reasonably foreseeable that the same person, who saw the curve and stepped up, would not also see the curve when it becomes necessary to step down. A review of the depositions and exhibits cause the Court to find that there was nothing hidden or latently dangerous in the area around the truck being viewed by Plaintiff.
>
> The testimony and photos demonstrated that the curve was not unreasonably dangerous, hidden or concealed and was discoverable by ordinary inspection. The curve or changing of elevation was open and obvious. Plaintiff had responsibility to exercise due care herself while walking in the area with the open and obvious curve and rise of elevation.

This appeal and cross-appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶10} Gibbs presents one assignment of error:

The trial court erred in granting defendants' motion for summary judgment.

A. The trial court erred in de facto failing to consider and address the deposition testimony of Plaintiff's expert witness Ronald W. Eck.

B. The trial court erred in finding that the open and obvious doctrine applies to this case.

{¶11} The appellees present one cross-assignment of error:

Although the trial court properly granted summary judgment in favor of Appellees/Cross-Appellants * * *, the trial court erred in finding Cross-Appellee to be an invitee instead of a licensee. By incorrectly classifying Cross-Appellee as an invitee when she was a licensee, the trial court erred in needing to reach the decision as to whether the alleged hazard was open

and obvious. Instead, the trial court should have determined no willful or wanton misconduct led to Cross-Appellee's injury and entered summary judgment in favor of Cross-Appellants.

### III.  LAW AND ANALYSIS

#### A.  Standard of Review

**{¶12}** We review a trial court's decision on a motion for summary judgment de novo. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12. We afford no deference to the trial court's decision but rather conduct an independent review to determine whether summary judgment is appropriate. *Id.* "A summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law." *Hawk v. Menasha Packaging*, 4th Dist. Ross No. 07CA2966, 2008-Ohio-483, ¶ 6.

**{¶13}** "The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law." *DeepRock Disposal Solutions, LLC v. Forté Prods., LLC*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 68. "To meet its burden, the moving party must specifically refer to 'the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action,' that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.*, quoting Civ.R. 56(C). "Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial." *Id.*

### B.  Consideration of Expert Testimony

{¶14} Gibbs contends the trial court erred in granting the summary judgment motion because it "erred in de facto failing to consider and address the deposition testimony" of Dr. Eck.  Gibbs maintains that "[i]t is beyond dispute that Dr. Eck is qualified to give an expert opinion in this case and that the [t]rial [c]ourt should have given significant weight to Dr. Eck's opinion."  She acknowledges that the trial court's summary judgment entry states that the court considered "transcripts of depositions."  However, Gibbs asserts that the trial court did not actually take Dr. Eck's opinions into account. She emphasizes that the court's entry "does not specifically mention Dr. Eck's deposition at all," "quote or reference any section of Dr. Eck's deposition," or use the word "expert." Gibbs cites various portions of Dr. Eck's report and deposition testimony and asserts that she presented "overwhelming evidence" that the appellees "were responsible for the hazardous condition" that caused her fall.  She claims there "is no question" she presented expert testimony which the trial court had to accept as true, which pertained to the appellees' liability, and "therefore raised a genuine issue of material fact that precluded summary judgment in" the appellees' favor.  Thus, she asserts the trial court "appears to have ignored or disregarded Dr. Eck's opinions and testimony" and erred in granting the appellees' summary judgment.

{¶15} "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment.  The failure of a trial court to comply with this requirement constitutes reversible error."  *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992), paragraph one of the syllabus.  "Thus, when a deposition is properly filed with the trial court, the

court must actually read it." *Hudson v. Hapner*, 4th Dist. Highland No. 15CA2, 2016-Ohio-1347, ¶ 22. "Accordingly, when 'a court has failed to consider a deposition properly before it in rendering summary judgment it commits error which is, *per se*, prejudicial and renders the judgment erroneous as a matter of law.' " *Id.*, quoting *Kramer v. Brookwood Retirement Community*, 1st Dist. Hamilton No. C-920182, 1993 WL 293413, *2 (Aug. 4, 1993).

{¶16} " 'Trial court proceedings generally enjoy a presumption of correctness and an appellant has the burden to affirmatively demonstrate error.' " *State v. Smith*, 4th Dist. Gallia Nos. 22CA3, 22CA4, 2023-Ohio-681, ¶ 20, quoting *State v. Pettygrove*, 4th Dist. Adams No. 12CA941, 2013-Ohio-1062, ¶ 7. The trial court's summary judgment entry explicitly states that the court considered "transcripts of depositions." The fact that the court did not specifically mention Dr. Eck's deposition does not prove the court did not consider it. In addition, even if we agreed with Gibbs that Dr. Eck's testimony raised a genuine issue of material fact which precluded summary judgment in the appellees' favor, that also would not prove the court simply failed to consider his testimony. Gibbs has not affirmatively demonstrated that the trial court failed to consider Dr. Eck's deposition testimony. *Contrast with Murphy* at 359-360 (trial court made statement indicating it "did not conduct even a cursory review" of the depositions before ruling on summary judgment motion, and Supreme Court of Ohio remanded to trial court "to conduct a conscientious examination of the record to determine whether summary judgment is appropriate"); *Hudson* at ¶ 23-24 (reversing summary judgment where it did not appear trial court considered all the depositions because the court made statements indicating it could not consider uncited parts of depositions, and the court specifically stated that it had reviewed

certain documents but did not state that it had reviewed the depositions). Thus, we reject Gibbs' contention that the trial court erred in de facto failing to consider and address Dr. Eck's deposition testimony.

### C.  Application of the Open and Obvious Doctrine

**{¶17}** Gibbs also contends that the trial court erred in granting the summary judgment motion because it "erred in finding that the open and obvious doctrine applies to this case." Gibbs asserts that Dr. Eck "presented attendant circumstances that allow reasonable minds to differ with respect to whether the dangerous condition on [the] car lot was open and obvious." Gibbs directs our attention to Dr. Eck's opinions that the curb was not installed for pedestrian use, that the curb face does not meet relevant accessibility criteria, that the curb face is not a walking surface, that the uniform concrete gray color makes it "extremely difficult to distinguish one surface from another" and "determine the slope of the curb," that the height and steepness of the curb cannot be perceived from above due to the lack of color contrast, and that "it is foreseeable that pedestrians will not detect the curb and that fall incidents will occur" because there "were no cues to emphasize the nature and location of the steeply-sloped curb and to draw attention to it." She asserts that "Dr. Eck's deposition testimony and opinion letter are sufficient to create a genuine issue of material fact as to whether or not the condition on [the] property that caused [her] to fall was open and obvious." Therefore, she asserts the trial court erred in granting the motion for summary judgment.

### 1.  Legal Principles

**{¶18}** " 'A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care;

and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury.' " *Stubbs v. Sybene Missionary Baptist Church, Inc.*, 4th Dist. Lawrence No. 20CA9, 2021-Ohio-3454, ¶ 16, quoting *Allen v. Rankin*, 4th Dist. Pickaway No. 12CA10, 2013-Ohio-456, ¶ 21. " 'In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed.' " *Id.* at ¶ 17, quoting *Allen* at ¶ 22. "Ohio ascribes to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability which determines the standard of care owed to the individual." *Wise v. E. Hall Funeral Home, Inc.*, 4th Dist. Lawrence No. 21CA6, 2022-Ohio-394, ¶ 13, citing *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994).

{¶19} The trial court found that Gibbs was an invitee. "A person 'who rightfully come[s] upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner' is an 'invitee.' " (Alteration sic.) *Id.*, quoting *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St. 3d 312, 315, 662 N.E.2d 287 (1996). " 'A landowner owes an invitee the duty to "exercise ordinary care to render the premises reasonably safe." ' " *Id.*, quoting *Combs v. Ohio Dept. of Natural Resources*, 146 Ohio St.3d 271, 2016-Ohio-1565, 55 N.E.3d 1073, ¶ 9, quoting *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925), syllabus. " 'Keeping the premises in a reasonably safe condition generally means that a premises owner (1) must not create a dangerous condition on its premises, and (2) must warn its invitees of latent or concealed dangers, if the premises owner has actual or constructive knowledge of those dangers.' " *Id.* at ¶ 14, quoting *Ray v. Wal-Mart Stores, Inc.*, 2013-Ohio-2684, 993 N.E.2d 808, ¶ 18 (4th Dist.).

{¶20} However, "landowners are not insurers of their invitees' safety." *Wright v. Williamsport*, 2019-Ohio-2682, 140 N.E.3d 1, ¶ 29 (4th Dist.). "Invitees are expected * * * to take reasonable precautions to avoid dangers that are patent or obvious." *Id.*, citing *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993). "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus.

{¶21} The rationale underlying the open and obvious doctrine is " 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' " *Id.* at ¶ 5, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at ¶ 13.

{¶22} " 'Open and obvious dangers are not hidden, are not concealed from view, and are discoverable upon ordinary inspection.' " *Wright* at ¶ 29, quoting *Zambo v. Tom-Car Foods*, 9th Dist. Lorain No. 09CA009619, 2010-Ohio-474, ¶ 8. " 'The determinative issue is whether the condition is observable.' " *Id.*, quoting *Kirksey v. Summit Cty. Parking Deck*, 9th Dist. Summit No. 22755, 2005-Ohio-6742, ¶ 11. "[C]ourts that review whether a danger is open and obvious employ 'an objective, not subjective, standard.' " *Id.* at ¶ 30, quoting *Goode v. Mt. Gillion Baptist Church*, 8th Dist. Cuyahoga No. 87876, 2006-

Ohio-6936, ¶ 25.  "[T]he question is whether a reasonable invitee would have discovered the hazard."  *Id.*  Therefore, " '[a] person's failure to notice an open and obvious condition until after he or she fell does not vitiate the application of the doctrine.' "  *Wise*, 4th Dist. Lawrence No. 21CA6, 2022-Ohio-394, ¶ 26, quoting *Breier v. Wal-Mart Stores, Inc.*, 6th Dist. Lucas No. L-08-1327, 2008-Ohio-6945, ¶ 11.  And " ' "[a] pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." ' "  *Id.*, quoting *Breier* at ¶ 11, quoting *Lydic v. Lowe's Cos.*, 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 16.

{¶23}  "In most situations, whether a danger is open and obvious presents a question of law."  *Tarlton v. Logan*, 4th Dist. Hocking No. 19CA1, 2019-Ohio-4832, ¶ 23.  "Under certain circumstances, however, disputed facts may exist regarding the openness and obviousness of a danger, thus rendering it a question of fact."  *Id.*  " 'Although the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to decide, the issue of whether a hazardous condition is open and obvious may present a genuine issue of fact for a jury to review.' "  *Id.*, quoting *Klauss v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 17.  " 'Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law.' "  *Id.*, quoting *Klauss* at ¶ 18.  " 'However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine.' "  *Id.*, quoting *Klauss* at ¶ 18.

{¶24}  " 'Attendant circumstances,' for example, may create a genuine issue of material fact as to whether a hazard is open and obvious."  *Id.* at ¶ 24.  "An attendant

circumstance is a factor that contributes to the fall and is beyond the injured person's control." *Id.* " 'The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.' " *Id.*, quoting *Cummin v. Image Mart, Inc.*, 10th Dist. Franklin No. 03AP-1284, 2004-Ohio-2840, ¶ 8.  The phrase has also been defined to encompass " 'any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.' " *Id.*, quoting *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 499, 693 N.E.2d 807 (1996).  "Ordinarily, 'the attendant circumstance must be "an unusual circumstance of the property owner's making." ' " *Id.*, quoting *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10, quoting *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 17.

### 2.  Analysis

**{¶25}**  Initially, we observe that the parties, trial court, and witnesses used a variety of terms to describe the area where Gibbs testified that she fell; for the sake of simplicity, we will refer to this area as the "curb" in our analysis.  In this case, the appellees owed no duty of care to Gibbs because the curb was open and obvious.  Gibbs admitted nothing obstructed her view of the curb prior to her fall, and had she been looking down, she probably would have seen it.[3]  Her husband admitted one might be able to see the curb if one got close to it and looked down.  Gibbs' son admitted that he saw the curb when he

---

[3] Although Gibbs' counsel objected during Gibbs' first deposition when appellees' counsel asked if Gibbs believed she would have seen the slope if she had looked down, Gibbs does not address the objection in her appellate brief, and Gibbs' counsel did not object when appellees' counsel inquired about the topic during Gibbs' second disposition.

got closer to it. And in viewing the photographs, we find that as a matter of law, the curb was visible to all persons entering and exiting the vehicle display area. *See generally Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 16 (plaintiff admitted in deposition that nothing obstructed his view of a guardrail prior to his fall, plaintiff admitted that he would have seen the guardrail if he had been looking down, and "in viewing the photographs supplied by both parties," Supreme Court of Ohio found "as matter of law" that the guardrail "was visible to all persons entering and exiting" the defendant's store and thus "presented an open-and-obvious danger"). The curb was observable even though it is harder to discern in some photographs due to the poor quality of the images. The curb was not hidden, was not concealed from view, and was discoverable upon ordinary inspection.

{¶26} Dr. Eck's opinions did not preclude the trial court from applying the open and obvious doctrine. We see no connection between the issue whether the curb was open and obvious and Dr. Eck's opinions that the curb was not installed for pedestrian use, that the curb face does not meet relevant accessibility criteria, and that the curb face is not a walking surface. Dr. Eck's opinion that the uniform concrete gray color makes it extremely difficult to distinguish one surface from another and determine the slope of the curb and opinion that the height and steepness of the curb cannot be perceived from above due to the lack of contrast do not create a genuine issue of material fact. Dr. Eck specifically testified that he was not offering an opinion on whether the curb was open and obvious. Moreover, the curb was open and obvious even if its exact height and slope could not be determined. *See generally Ryan v. Guan*, 5th Dist. Licking No. 2003CA00110, 2004-Ohio-4032, ¶ 12 ("hazard presented by the slope was open and

obvious, even though the exact degree of the slope was unknown," because "[b]usiness invitees entering the premises could ascertain the ramp was sloped"). Finally, even if, as Dr. Eck opined, it is foreseeable that pedestrians will not detect the curb and fall due to a lack of cues drawing attention to it, the foreseeability of falls is a separate issue from whether the curb was open and obvious.

{¶27} There is no genuine issue of material fact. When viewing the evidence in favor of Gibbs, reasonable minds could only conclude that the curb was open and obvious and that no attendant circumstances rendered it less than open and obvious. Thus, we reject Gibbs' contention that the trial court erred in finding that the open and obvious doctrine applies to this case. We do not reach the argument raised by appellees that any purported misapplication of the open and obvious doctrine is irrelevant because the grant of summary judgment was supported by an alternate ground which Gibbs did not appeal.

## D. Conclusion

{¶28} For the foregoing reasons, we reject Gibbs' contention that the trial court erred in granting the summary judgment motion because it erred in de facto failing to consider and address Dr. Eck's deposition testimony and erred in finding that the open and obvious doctrine applies to this case. Because the curb was open and obvious, the appellees had no duty to Gibbs, and they were entitled to judgment as a matter of law. Accordingly, we overrule Gibbs' sole assignment of error and affirm the trial court's judgment. This decision renders moot the cross-assignment of error, so we do not address it. App.R. 12(A)(1)(c).

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**